# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 2:25-cr-20016-MSN

CHRISTOPHER BUSBY,

    Defendant.

---

### ORDER ON REPORT AND RECOMMENDATIONS AND
### GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
### OBTAINED BY DEFECTIVE SEARCH WARRANT

---

Before the Court is the Magistrate Judge's Report and Recommendations (ECF Nos. 61 & 62, "Report"). The Report recommends that Defendant's Motion to Suppress Evidence Obtained by Defective Search Warrant (ECF No. 42, "Motion") be denied. The government had no objections to the Report. (ECF No. 67.) Defendant made objections to the Report (ECF No. 65), and the government has responded to those objections. (ECF No. 67). The matter is now ripe for this Court's review.

## BACKGROUND

Defendant's Motion alleges that a search warrant issued for a hotel room, Room 208 at the Starlite Inn, in Memphis, Tennessee, was deficient for several reasons and that firearms recovered from the hotel room should be excluded as evidence in this matter. Defendant attached the alleged search warrant at issue, along with its supporting affidavit, to his Motion. (*See* ECF Nos. 42, 42-1.) And the facts asserted in Defendant's Motion are drawn from the alleged search warrant and supporting affidavit. (*See* ECF No. 42 at PageID 58–59.) The government's response to the

Motion also attached the alleged search warrant and supporting affidavit. (*See* ECF No. 56-1.) In addition, the government included an alleged Parole Certificate signed by Defendant from the State of Tennessee Board of Parole as an exhibit to its response. (*See* ECF No. 56-2.) And in its response, the government argued in part that the officers did not need probable cause to search the hotel room because, at the time of the search, Defendant was a parolee who had agreed to warrantless searches of his "person, vehicle, property, or place of residence," by any "law enforcement officer, at any time without reasonable suspicion." (*See* ECF No. 56 at PageID 88–89; ECF No. 56-2.)

The Motion was referred to the Magistrate Judge, who set the matter for an evidentiary hearing. At the hearing, however, the government announced that it would not be putting on any proof because the Motion attacked only the sufficiency of the warrant and affidavit. (ECF No. 68 at PageID 129.) The Magistrate Judge noted that she was not sure the government's interpretation of the Motion was correct, but that it was up to the parties to decide what proof, if any, they would put on. (*Id.* at PageID 130.) And indeed, neither party put on witnesses nor introduced other evidence. (*See* ECF No. 61 at PageID 107.) Both parties made arguments, and the Magistrate Judge issued her Report based only on the Motion, the government's response, and the attachments to those filings, including the search warrant, its supporting affidavit, and the parole certificate.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the

2

district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in forfeiture of those objections. Fed. R. Crim. P. 59(b)(2).[1]

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985).

---

[1] Although the text of the Rule 59(b)(2) provides that a failure to object "waives a party's right to review," the Sixth Circuit has clarified that a failure to object is not a waiver, but a forfeiture. *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) ("We clarify that forfeiture, rather than waiver, is the relevant term here.") (explaining, "*Thomas v. Arn* held that 'the failure to file objections to the magistrate's report *waives* the right to appeal the district court's judgment,'" but *Arn* preceded the Supreme Court's clarification in *United States v. Olano*, 507 U.S. 725, 733 (1993).) The difference matters because forfeited issues may nevertheless be considered on appeal in certain circumstances. *Id.* (citing *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018)).

3

## THE REPORT AND DEFENDANT'S OBJECTIONS

The Report recommends denying Defendant's Motion because Defendant was on parole at the time of the search and had consented to searches of his person and residence without a warrant or reasonable suspicion. (ECF No. 61 at PageID 107.) Because the Magistrate Judge found the government's argument about parole conclusive, she did not reach Defendant's other arguments about the warrant. (*Id.*) As to the use of GPS in locating the Hyundai Tucson, the Magistrate Judge concluded that, if this was construed as a search of Defendant's person or vehicle, then Defendant had consented to the search as a condition of parole. (*Id.* at PageID 108.) Alternatively, if it was not Defendant's vehicle, the Magistrate Judge found that Defendant did not have Fourth Amendment "standing" to challenge the search. (*Id.*)

In his objections, Defendant asserted that the parole certificate could not be relied on because it was "not admitted as evidence, not authenticated, not subject to confrontation or cross-examination, and which did not give the lower court any length of time the parole was to last." (ECF No. 65 at PageID 114.) Defendant, however, did not make either of these arguments to the Magistrate Judge, so Defendant's parole status appeared to be uncontested. However, because Defendant has now objected, this Court must review the issue *de novo*. Fed. R. Crim. P. 59(b)(3). And after a *de novo* review, this Court finds that the parole certificate is insufficient to show that Defendant was on parole at the time of the search at issue[2] because the length of Defendant's parole cannot be determined from the face of the document. Because the Report's findings and recommendations were based on Defendant being on parole at the time of the search, the Court

---

[2] In its response to Defendant's objections, the government says that, according to Defendant's parole officer, his parole was set to expire on November 30, 2024. (ECF No. 67 at PageID 124.) The government's response cites "Exhibit A" in support, but there was nothing attached to its response. (*Id.*)

will not adopt those findings or recommendations. The Court's findings of fact and conclusions of law are set forth below.

## FINDINGS OF FACT

The following findings of fact are based solely on the search warrant and supporting affidavit. As recounted above, Defendant attached the warrant and its supporting affidavit to his motion, and the government also attached those same documents to its response. Neither party challenged the authenticity or accuracy of those documents or the factual statements therein. The parties chose not to present testimony or other evidence at the evidentiary hearing that was set before the Magistrate Judge on the Motion, and neither party has requested that this Court hold a *de novo* hearing or reopen proof.

The search warrant was issued based on the affidavit of Detective Adkins with the Shelby County Sheriff's Office ("SCSO"). (ECF No. 42-1; ECF No. 56-1.) The affidavit was signed on October 25, 2023, and at that time, Detective Adkins had five years of law enforcement experience, including two years as an investigator. (ECF No. 42-1; ECF No. 56-1.) According to the affidavit, SCSO deputies responded to a call regarding a car burglary "in the early morning hours" of October 16, 2023. (ECF No. 42-1; ECF No. 56-1.) The victim of the car burglary told officers that his CZ handgun and $1,000 in cash were stolen from his 2012 Nissan Rogue. (ECF No. 42-1; ECF No. 56-1.) The victim provided surveillance video of the auto burglary to the SCSO deputies, which showed "a male subject, approximately 6'0 in height, wearing dark clothing, a hat, and a face cover unlawfully enter" the victim's car. (ECF No. 42-1; ECF No. 56-1.) As the male subject on the video walked away, he had "a very distinct limp in his walk." (ECF No. 42-1; ECF No. 56-1.) Detective Adkins asserted that the male subject's appearance and limp were consistent with an individual named Christopher Busby, who Detective Adkins said was a "documented Auto

5

Burglar" that he was familiar with from his "extensive history" investigating other auto burglaries committed by Busby.  (ECF No. 42-1; ECF No. 56-1.)  Video from other surveillance cameras showed a Hyundai Tucson with Tennessee license plate 086-BKYX entering the "immediate area of the Auto Burglary" at approximately 1:30 a.m. on October 16, 2023.  (ECF No. 42-1; ECF No. 56-1.)

At some point, Detective Adkins learned that the Hyundai Tucson was registered to EZ Auto Rental at 2747 Lamar Avenue, Memphis, Tennessee.  Nine days after the auto burglary, Detective Adkins went to EZ Auto Rental and spoke with the owner, Mr. Kim, who gave him information about the individual who had rented the Hyundai Tucson.  (ECF No. 42-1; ECF No. 56-1.)  And, as it turned out, that person was "known by Detective Adkins to be an immediate family member of Christopher Busby."  (ECF No. 42-1; ECF No. 56-1.)  Mr. Kim also gave Detective Adkins the current location of the Hyundai Tucson, which was the Starlite Inn at 2996 S Third Street in Memphis.  (ECF No. 42-1; ECF No. 56-1.)  Another detective then reviewed surveillance video from the Starlite Inn, which showed a male subject matching Busby's description "leave the suspect vehicle and gain entry into room #208."  (ECF No. 42-1; ECF No. 56-1.)  The affidavit averred that a search warrant for Room 208 at the Starlite Inn would "assist in several ongoing investigation regarding TCA 39-13-1002."  The affidavit was signed and dated October 25, 2023.  (ECF No. 42-1; ECF No. 56-1.)  The search warrant was issued the same day.

The search warrant specified the place to be searched as "The Starlite Inn Room #208 at 2996 S Third St, Memphis, TN 38109," and the property to be seized as "Firearms, Firearm Accessories, Burglary Tools, Documents of Identification, and any other Stolen Property/Evidence related to the crime of TCA 39-13-1002 Burglary."  (ECF No. 42-1; ECF No. 56-1.)

**CONCLUSIONS OF LAW**

First, Defendant argues that the use of GPS to locate the Hyundai Tucson violated his Fourth Amendment rights. Second, Defendant argues that the search warrant for the room at the Starlite Inn was defective because it was not based on probable cause and was not sufficiently particular.

A.  **Use of GPS to Locate Hyundai Tucson**

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"Fourth Amendment rights are . . . personal," meaning that a defendant must show his own Fourth Amendment rights were violated to justify suppression. *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) (citations omitted). To show that his own Fourth Amendment rights were violated, a defendant must show that he "had a legitimate expectation of privacy in the premises searched." *Byrd v. United States*, 584 U.S. 395, 403 (2018) (citation modified); *see United States v. Rogers*, 97 F.4th 1038, 1041–42 (6th Cir. 2024). To have a legitimate expectation of privacy, the defendant must show that (1) he had "an actual (subjective) expectation of privacy," and his "expectation must also be one that society is prepared to recognize as reasonable." *Rogers*, 97 F.4th at 1041–42 (citation modified). Whether a defendant had a legitimate expectation of privacy is determined "on a case-by-case basis, considering among other factors the defendant's proprietary or possessory interest in the place to be searched, his right to exclude others, and whether he was legitimately on the premises." *Id.* at 1042 (citation modified). "It is the defendant's burden to show that he had a reasonable expectation of privacy in the area searched or

7

items seized." *United States v. Whipple*, 92 F.4th 605, 610 (6th Cir. 2024); *see, e.g.*, *Russell*, 26 F.4th 375.

For the reasons set forth below, the one-time use of GPS to locate the Hyundai Tucson did not violate Defendant's Fourth Amendment rights.

First, GPS was used to locate a rental car that was rented by someone other than Defendant, and Defendant has not shown that he had lawful possession or control over that car. *See Byrd v. United States*, 584 U.S. 395, 409 (2018). It is also not clear whether Defendant drove the vehicle or was a passenger. *See Rogers*, 97 F.4th at 1042–43; *Russell*, 26 F.4th at 377. The affidavit states only that the surveillance footage shows him "leave the suspect vehicle." For these reasons, Defendant has not shown he had a legitimate expectation of privacy in the rental car's location.

Second, even if Defendant had a legitimate expectation of privacy in the Hyundai Tucson's location, there was still no Fourth Amendment violation because the one-time use of GPS to find the car's current location was not a search.

Defendant focuses his argument on *Carpenter v. United States*, which involved the government obtaining cell-site location information (CSLI) for the defendant's phone over a period of just over 127 days. 585 U.S. 296, 301–02 (2018). The Supreme Court held that this was a search, and the government was required to get a warrant to execute the search. *Id.* at 313, 316. But *Carpenter* involved location information for the defendant's phone over several months. The Court described the decision as a "narrow one," and noted that the issue of real-time CSLI was not before it. *Id.* at 316.

The GPS location information here is more akin to real-time CSLI, and whether that implicates the Fourth Amendment was expressly left open by *Carpenter*. 585 U.S. at 316. Pre-*Carpenter*, the Sixth Circuit found that real-time tracking of a defendant's cell phone for seven

8

hours did not constitute a search. *See United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017). Post-*Carpenter*, the Sixth Circuit, like the Supreme Court, has continued to leave open whether "*Carpenter*'s holding applies with equal force to real-time CSLI." *United States v. Ennis*, No. 21-1093, 2022 WL 976930, at *2 (6th Cir. Mar. 31, 2022). Two post-*Carpenter* decisions from other Circuit Courts of Appeals, however, suggest that obtaining real-time CSLI is not a search. *See United States v. Hammond*, 996 F.3d 374, 391–92 (7th Cir. 2021) (finding that obtaining real-time CSLI for about six hours while the defendant travelled on public roads was not a search); *United States v. Howard*, 858 F. App'x 331, 332–34 (11th Cir. 2021) (finding that 22 hours of GPS monitoring while the defendant was driving on public roads was not a search).

Again, the *Carpenter* decision was a "narrow one," and it expressly left open whether real-time CSLI implicated the Fourth Amendment. And because *Riley*'s holding, that six hours of real-time location monitoring was not a search, is not inconsistent with *Carpenter*, *Riley* continues to control the outcome here. *See Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 458 (6th Cir. 2022) ("A prior published decision of this Court remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision." (citation modified)). For that reason, the single instance of obtaining the real-time GPS location of the Hyundai Tucson was not a search.

Finally, Defendant has not shown there was governmental action. Because "the Fourth Amendment proscribes only governmental action . . . it doesn't apply to a search or seizure—even an unreasonable one—conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Powell*, 836 F. App'x 391, 394 (citation modified).

9

In the Sixth Circuit, courts apply a two-part test to determine "when a 'private' person acts as the government's agent." *Id.* For the Fourth Amendment to apply, the defendant must show that (1) the police instigated, encouraged, or participated in the search, <u>and</u> (2) the private individual engaged "in the search with the intent of assisting the police in their investigative efforts." *Id.*

All that is known from the record here is that sheriff's deputies initiated the contact with Mr. Kim by going to EZ Auto Rental. But the record contains no additional information about the officers' interaction with Mr. Kim or Mr. Kim's intent in providing the location of the Hyundai Tucson to police. Without more, Defendant has not shown governmental action.

For the reasons set forth above, Defendant has not shown that his Fourth Amendment rights were violated when Mr. Kim obtained the Hyundai Tucson's current location and gave it to police.

**B.    <u>The Search Warrant</u>**

The Fourth Amendment requires that warrants "identify the place to be searched and the things to be seized." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (citation modified); *United States v. Castro*, 881 F.3d 961, 964 (6th Cir. 2018) ("The Fourth Amendment demands that a search warrant particularly describe the places law enforcement may search and the things they may seize."). Warrants may be issued only if there is probable cause establishing "a nexus between the place to be searched and the evidence sought." *United States v. Florence*, No. 24-3729, 2025 WL 2539022, at *2 (6th Cir. Sept. 4, 2025) (citing *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011)); *Reed*, 993 F.3d at 447 (explaining there must be "a probable-cause 'nexus'" that "connect[s] these two together" (citations omitted)).

But "[p]robable cause is 'not a difficult standard to meet.'" *United States v. Florence*, No. 24-3729, 2025 WL 2539022, at *2 (6th Cir. Sept. 4, 2025) (citing *United States v. Whitlow*, 134

10

F.4th 914, 919 (6th Cir. 2025)). It is merely "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. O'Connor*, 723 F. App'x 302, 306 (6th Cir. 2018) (citation modified) (quoting *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)). "The critical question is whether there was a 'fair probability' that the officers would find evidence of criminal wrongdoing in the location to be searched." *Florence*, 2025 WL 2539022, at *2 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The other requirement, particularity, is intended "to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *United States v. Chaney*, 921 F.3d 572, 581 (6th Cir. 2019) (citation modified). A warrant may fail to satisfy the particularity requirement when (1) it does not provide enough information "to guide and control the agent's judgment in selecting what to take," or (2) "the category of things specified is too broad in the sense that it includes items that should not be seized." *Chaney*, 921 F.3d at 581.

"There is no formula that determines whether a warrant is sufficiently particular." *Id.* at 585. When deciding whether a warrant is sufficiently particular, courts give warrants "a commonsense contextual reading." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018). How specific the warrant must be "depends on the crime involved and the types of items sought." *Chaney*, 921 F.3d at 585; *United States v. Banks*, 684 F. App'x 531, 536 (6th Cir. 2017).

If the purpose of the warrant is to search for and seize "illicit property or contraband," then a general reference to things such as "drugs" or "narcotics" is sufficient. *See United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001) (citation omitted); *see also United States v. Meadows*, No. 3:19-CR-95-TAV-HBG-2, 2019 WL 6258068, at *6 (E.D. Tenn. Oct. 18, 2019), *report and recommendation adopted*, No. 3:15-CR-95-TAV-HBG-2, 2019 WL 6255837 (E.D. Tenn. Nov. 22,

11

2019) (explaining that, because "[f]irearms are evidence of drug trafficking," they can be "seized pursuant to a search warrant directed at narcotics," even if the warrant lacks an "explicit reference to or independent probable cause to search for firearms"). Similarly, "naming only the generic class of items" will suffice if "the precise identity of goods cannot be ascertained at the time the warrant is issued." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (citation modified). And, "in some circumstances, a warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *Chaney*, 921 F.3d at 585 (citation modified); *Castro*, 881 F.3d at 965. However, "a warrant referring to stolen property of a certain type is insufficient if that property is common." *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) (citation omitted); *United States v. Blakeney*, 942 F.2d 1001, 1026–27 (6th Cir. 1991) (finding search warrant was overbroad in using "the generic term jewelry, when an inventory of the items taken during the . . . robbery was available to the agent applying for the search warrant").

Here, officers seized two Glock handguns pursuant to a warrant that was issued based on an affidavit that outlined evidence in the investigation of a single auto burglary in which one firearm—a CZ handgun—was stolen. The Court does not reach whether there was a probable cause nexus for the warrant because, after careful consideration, the seized guns must be suppressed because either (1) they were seized pursuant to an overbroad warrant, or (2) their seizure was outside the scope of the warrant.

First, the warrant is overbroad. The search warrant states that the property to be searched for is "firearms." By using the generic term "firearms," the warrant authorized a broader search than was reasonable given the facts alleged in Detective Adkins' affidavit. The affidavit described a single burglary. And according to the affidavit, the victim of that burglary told police that his

12

"CZ Handgun" was stolen from his vehicle. Although the affidavit says that a search warrant would "assist in several ongoing investigations regarding TCA 39-13-1002," it does not give details about those investigations, including if any firearms were stolen. The bottom line is that police had more information available to them to help identify the one firearm that was subject to seizure based on the evidence outlined in the affidavit, but that specific information was not included in the warrant. And because a firearm is not inherently contraband, that generic description, without more, was insufficient to satisfy the Fourth Amendment. *Cf. United States v. Peterson*, 358 F. Supp. 3d 681, 686–87 (S.D. Ohio 2019) (finding inclusion of "firearms and ammunition" was consistent with practice of describing "generic class of items to be seized" based on officer's assertion in warrant that he was "aware that individuals engaged in fraud and large-scale trafficking of stolen property offenses sometimes utilize firearms to protect their illegal property and proceeds").

Alternatively, if the warrant was not overbroad, the seizure of the Glocks was outside the scope of the warrant. The warrant uses the generic description "firearms," but it references them being needed for "the investigation of the crime of TCA 39-13-1002 Burglary," with the note as to probable cause saying, "See Attached," referencing Officer Adkins' attached affidavit. So, read together, it is not far-fetched to say that the warrant authorized seizure of the firearm stolen in the burglary that is described in Officer Adkins' attached affidavit. *See Castro*, 881 F.3d at 964–65 (prefatory language in warrants saying that they were "based on 'probable cause to believe that evidence of violations of Texas Penal Code 29.03 (Aggravated Burglary)' would be found on phones" was a "'global modifier' that limited the scope of the warrant to evidence of aggravated burglary" (citations omitted)); *United States v. Evans Landscaping Inc.*, 850 F. App'x 942, 947–48 (6th Cir. 2021) (explaining that the particularity requirement may be satisfied via a warrant's

13

incorporation of warrant application). But, if the warrant is read as authorizing a search for and seizure of only the firearm stolen during the car burglary described in Officer Adkins' affidavit, then the officers' seizure of the Glocks was outside the scope of the warrant. Generally, if officers want to seize items outside a warrant's scope, they need to either request a new warrant, or the items need to be seizable pursuant to an exception to the warrant requirement.[3] *United States v. Whiteside*, 141 F.4th 734, 746–47 (6th Cir. 2025).

Officers here did not get another warrant. And because the government did not put on any proof, the record is insufficient to find that officers seized the two Glock handguns pursuant to an exception to the warrant requirement. For example, it may have been reasonable for officers to seize the Glock handguns if the officers knew that Defendant was a felon, and the Glocks were also in plain view.[4] *See Whiteside*, 141 F.4th at 747–49; *Childress v. Michalke*, No. 10-CV-11008, 2014 WL 3819347, at *18 (E.D. Mich. Aug. 4, 2014). There is, however, no evidence about where the Glocks were found or whether the officers knew Defendant was a felon. Also, the government's response alleges that about 47 grams of marijuana were seized, some in a mason jar and some in a bag, along with two digital scales. So perhaps the marijuana and Glock handguns were seized because their incriminating character was "immediately apparent." *See Whiteside*, 141 F.4th at 748–49. But again, without any testimony or other evidence, the Court does not know if the presence of marijuana and digital scales is why the officers seized the Glocks.

---

[3] Although "evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant," *Wheeler*, 660 F.3d at 939 (citation modified), there are no facts to support that was the case here.

[4] This example assumes that the warrant is construed as sufficiently particular such that the officers were lawfully present in the hotel room, as required for the plain view exception to apply. *See Whiteside*, 141 F.4th at 747.

14

So it is safe to say that there are a lot of unanswered questions in this matter. But what is before the Court boils down to this: officers seized two Glock handguns pursuant to a warrant that authorized a search for "firearms," but the warrant affidavit described only a single auto burglary in which a CZ handgun was stolen. Because more information about the stolen firearm was available to officers but not included in the warrant, the warrant is overbroad. Alternatively, even if the warrant is construed as sufficiently particular via reference to TCA § 39-13-1002 or incorporation of the supporting affidavit, then the seizure of the Glocks was outside the scope of the warrant.

C.   **The Good Faith Exception**

Generally, evidence seized during an unconstitutional search should be excluded. *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). When police obtain a warrant from a neutral judge, however, the Supreme Court has held that the exclusionary rule should generally not apply because exclusion "seeks to deter police (not judicial) misconduct." *Reed*, 993 F.3d at 450. Under this exception—dubbed the "good faith exception"—exclusion is not required if the evidence was "obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

The good faith exception does not apply, however, in at least four scenarios:

(1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;

(2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police;

(3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

15

(4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Lewis*, 81 F.4th 640, 647 (6th Cir. 2023) (citation modified).

So what about the good faith exception here? Nothing suggests that Detective Adkins knowingly submitted a false affidavit or otherwise acted in bad faith, nor is there anything indicating that the magistrate judge abandoned her judicial role or failed to act in a neutral fashion. And Detective Adkins' affidavit was not "bare bones." So, application of the good faith exception boils down to whether Detective Adkins' reliance on the warrant was in good faith and objectively reasonable. Put differently, would a reasonable officer have known that listing only "firearms" as the items to be searched for was deficient? It is a close call given the circumstances. Notably, generic descriptions like "firearms" *are sufficient* in some circumstances, such as when officers seek seizure of firearms as evidence of drug trafficking. But the Court has found very few cases addressing the good faith exception for the generic use of "firearms" in other contexts.[5] However, in the context of a warrant for stolen property, the Sixth Circuit has held that a reasonable officer would have known the warrant was deficient when it listed only general categories of items to be seized because additional information was available to the officers that could have helped identify the stolen items. *Wheeler*, 660 F.3d at 923–43. And although *Wheeler* dealt with qualified

---

[5] One of the only cases the Court was able to find was *United States v. Woodley*, No. 15-CR-20007, 2016 WL 1387947, at *2 (E.D. Mich. Apr. 8, 2016). In *Woodley*, the district court declined to suppress a Bushmaster rifle and magazine found pursuant to a warrant authorizing a search for "any and all firearms." *Id.* The defendant argued that because the victim described the weapon used in the crime as "an AK-47," and the affidavit in support of the warrant referred to the weapon as an "assault rifle," the warrant's authorization for "any and all firearms" was overbroad. *Id.* at *2–3. The district court noted that there was some authority supporting the defendant's argument, citing *United States v. Gardner*, 537 F.2d 861, 862 (6th Cir. 1976), but it declined to suppress the gun because, even if the warrant was overbroad, the good faith exception applied. *Id.* But the analysis for that conclusion is not entirely clear given that it was originally an oral ruling that was summarized in a subsequent order addressing a different motion.

immunity, its reasonableness analysis "similarly applies to the suppression context presented here." *United States v. Watson*, 498 F.3d 429, 432 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). So, based on *Wheeler*, the good-faith exception does not apply, and the Glock handguns must be suppressed.

**D.      Party Presentation and Standing**

"In our adversarial system of adjudication, we follow the principle of party presentation." *Clark v. Sweeney*, 146 S. Ct. 410, 412 (2025) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)). In accordance with that principle, courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Sineneng-Smith*, 590 U.S. at 375 (citation omitted). "In short: Courts are essentially passive instruments of government." *Id.* (citation modified). "They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Id.* (citation modified).

This Court endeavored to follow the party presentation principle in this case, so it did not address Defendant's expectation of privacy in the hotel room.

"The Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967) (citation modified). And "people—whether renters, couch surfers, or nomads—have a reasonable expectation of privacy in places that function as home." *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) (citation modified). So "a hotel room may be the object of Fourth Amendment protection as much as a home or an office." *United States v. Lanier*, 636 F.3d 228, 231 (6th Cir. 2011) (citation modified). But, as the Court already discussed when addressing Defendant's arguments about the use of GPS to locate the Hyundai Tucson, Fourth Amendment rights are personal. *Russell*, 26 F.4th at 374. Which means that "defendants must establish the

17

requisite connection to a place before the Fourth Amendment's shield can apply." *United States v. Arreola-Alvarado*, 603 F. Supp. 3d 534, 540 (E.D. Mich. 2022) (citing *Minnesota v. Carter*, 525 U.S. 83, 99 (1998) (Kennedy, J., concurring)).

Here, Defendant did not provide any evidence to support that he had a subjective expectation of privacy in the hotel room or that his expectation of privacy in the hotel room was objectively reasonable. And it was Defendant's burden to do so. *See Whipple*, 92 F.4th at 610; *Russell*, 26 F.4th at 375. Because Defendant did not meet this burden, he did not show that the Fourth Amendment's protections applied to the search of the room at the Starlite Inn.

The government, however, did not argue that Defendant lacked standing to contest the search of the hotel room. The closest it got to making that argument was asserting that Defendant generally bore the burden of proof and persuasion for a motion to suppress. (*See* ECF No. 67 at PageID 123.) But the government did not connect that argument to Defendant's standing.

In addition, it is unclear whether it would be error for the Court to address the standing issue *sua sponte*. *See Russell*, 26 F4th at 376 n.4. In the end, the better part of valor was to abide by the party presentation principle, even though the government may still raise the issue on appeal. *See id.* 375–77.

### E.    The Lack of Evidence and Reopening Proof

One final thing. The Court had, and continues to have, significant heartburn about making decisions in this matter based on a lack of record evidence. But ultimately, it was the parties who decided not to put on evidence at the hearing.

Adding to the confusion, both sides alluded to information in their briefs for which no evidence was introduced. For example, the government referenced information about the dates of Defendant's parole and other items seized during the search of the hotel room, including

approximately 47 grams of marijuana and two digital scales. (ECF No. 67 at PageID 124; ECF No. 56 at PageID 86–87.) Similarly, in his objections, Defendant described the hotel room as his residence, (see ECF No. 65 at PageID 117), but again, there was no evidence offered on this point. And previously, in his Motion, Defendant had argued that the search warrant was for "a hotel room that, as far as we know, the defendant had only entered once." (ECF No. 42 at PageID 58.)

Also, despite both parties making arguments about the burden of proof, (see ECF No. 65 at PageID 64–65; ECF No. 67 at PageID 123), neither party requested that this Court hold a *de novo* hearing or reopen the proof to resolve any potential issues.

But requesting to reopen the proof may have been futile in any event. The Sixth Circuit has cautioned that district courts "should be extremely reluctant to grant reopenings." *United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) (citation modified); *United States v. Baker*, 562 F. App'x 447, 450 (6th Cir. 2014). And the party moving to reopen a suppression hearing must first "provide a reasonable explanation for failing to present the evidence initially." *United States v. White*, 455 F. App'x 647, 651 (6th Cir. 2012) (citation omitted); *United States v. Holland*, 522 F. App'x 265, 270 (6th Cir. 2013). But again, no request for reopening was made, so the Court need not hazard a guess about whether the standard to reopen could be met here.

## CONCLUSION

For the reasons set forth above, the Court does not adopt the Report and Recommendations (ECF Nos. 61 & 62). For the reasons set forth above, the warrant was either overbroad, or the Glocks were outside the scope of the warrant. And because the good-faith exception does not apply, Defendant's Motion to Suppress Evidence Obtained by Defective Search Warrant (ECF No. 42) is **GRANTED**.

The ramifications of this ruling remain to be seen, but justice requires nothing less. Upholding the rule of law is paramount regardless of the consequences—*fiat justitia ruat caelum*—let justice be done though the heavens fall. "The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws . . . ." *Mapp v. Ohio*, 367 U.S. 643, 659 (1961).

**IT IS SO ORDERED**, this 10th day of February, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE